936 F.2d 1420
 33 ERC 1573, 20 Fed.R.Serv.3d 136, 21
Envtl. L. Rep. 21,253
 STATE OF NEW YORK, Plaintiff,
v.
AMRO REALTY CORPORATION; Harry Moskowitz and David
Moskowitz, Defendants-Third-Party Plaintiffs-Appellants,
v.
ZURICH INSURANCE COMPANY; Graphic Arts Mutual Insurance
Company; Federal Insurance Company and Home
Insurance Company, Third-Party Defendants,
Atlantic Mutual Insurance Company; Unigard Security
Insurance Company; Lumbermens Mutual Casualty
Company and First State Insurance
Company, Third-Party
Defendants-Appellees.
 No. 1058, Docket 90-7940.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 4, 1991.
Decided June 25, 1991.
 
 1
 Hiram D. Gordon, Janvey, Berglas & Gordon, New York City, for defendants-third-party plaintiffs-appellants.
 
 
 2
 James M. Sweet, Paul McDonald, Paul St. Antoine, Drinker Biddle & Reath, Philadelphia, Pa., for third-party defendant-appellee, Lumbermens Mut. Cas. Co.
 
 
 3
 Andrew Feldman, Barbara L. Schifeling, Damon & Morey, Buffalo, N.Y., for third-party defendant-appellee, Unigard Sec. Ins. Co.
 
 
 4
 Lewis G. Adolfsen, Steven G. Adams, Amy Gallent, Siff, Rosen & Parker, P.C., New York City, for third-party defendant-appellee, First State Ins. Co.
 
 
 5
 Michael F. Close, Barry, McTiernan & Moore, New York City, for third-party defendant-appellee, Atlantic Mut. Ins. Co.
 
 
 6
 Thomas W. Brunner, Laura A. Foggan, Francis M. Gaffney, Wiley, Rein & Fielding, Washington, D.C., for amicus curiae, Insurance Environmental Litigation Ass'n.
 
 
 7
 Before NEWMAN and ALTIMARI, Circuit Judges, and CONBOY, District Judge.*
 
 CONBOY, District Judge:
 
 8
 This appeal concerns an insurance coverage dispute. The insured parties are the defendants/third-party plaintiffs, AMRO Realty Corp. ("AMRO") and David and Harry Moskowitz (collectively, "the insureds"). They have been sued by The State of New York for violations of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9601 et seq., and for creating and maintaining a public nuisance, in connection with the discharge of hazardous waste from a site owned by AMRO and leased to a manufacturer, American Thermostat ("AT"). David and Harry Moskowitz were officers, directors, and part-owners of AT. Harry Moskowitz was an officer, director, and shareholder of AMRO. The insureds sought coverage from several of their carriers, and were denied coverage. The insureds now appeal from two orders of the United States District Court for the Northern District of New York (Neal P. McCurn, Chief Judge ), which granted summary judgment to three of the insurance companies that were impleaded by the insureds in the action below, and partial summary judgment to a fourth.
 
 
 9
 The district court first held that Lumbermens Mutual Casualty Co. ("Lumbermens") and Unigard Security Insurance Co. ("Unigard") were not timely notified by the insureds of the occurrence of the pollution, that Lumbermens did not waive its right to invoke the "untimely notice" defense to coverage, and that the "pollution exclusion" clause (a part of all the insurance policies except the one issued by Lumbermens) excused Unigard from any coverage obligations. New York v. Amro Realty Corp., 697 F.Supp. 99 (N.D.N.Y.1988) ("Amro I "). In a subsequent order, Judge McCurn reaffirmed his previous order with respect to Lumbermens and Unigard, and granted the summary judgment motions of Atlantic Mutual Insurance Co. ("Atlantic")[1] and First State Insurance Co. ("First State") on the basis of the "pollution exclusion" clause. New York v. Amro Realty Corp., 745 F.Supp. 832 (N.D.N.Y.1990) ("Amro II "). In the second order, Judge McCurn also certified as final under Fed.R.Civ.P. 54(b) the judgments in favor of the four insurers.
 
 FACTUAL BACKGROUND
 
 10
 In 1981, New York State environmental officials discovered pollution at a site owned by AMRO and leased to AT, in South Cairo, New York ("the site"). That same year, the State brought suit against AT and AMRO in state court, alleging that AMRO and AT had engaged in pollution from the 1950's through 1981, by improperly disposing solvents including tetrachloroethylene and trichloroethylene into a drainage ditch, into groundwater via a septic system, and by dumping the solvents directly onto the ground. The complaint alleged causes of action under common law and state environmental statutes. Several residential neighbors of the site also filed suits in state court against AMRO and AT at that time. In 1983, the State entered into an interim consent order with AMRO and AT which obligated them to undertake remedial measures and supply local residents with bottled water. In November 1985, AT was forced into Chapter 7 bankruptcy, and ceased compliance with the consent order.
 
 
 11
 On March 19, 1986, after the break in compliance, the New York State Attorney General's Office sent letters to AMRO and Harry and David Moskowitz notifying them that the State "intends to commence legal action against you" under CERCLA and common law in connection with the pollution from the site, and informing the Moskowitzes that they might be personally liable under CERCLA and state common law. On December 2, 1986, the State filed its complaint in this action. The complaint is brought against AMRO, Harry Moskowitz, and David Moskowitz, and includes causes of action under CERCLA and common law nuisance.
 
 
 12
 At the time of the 1981 suit, AMRO and AT notified their then liability insurer, Atlantic, of the claim. (The Atlantic policies covered the period from January 1, 1974 to January 1, 1983.) They did not, however, until much later notify any of the carriers who had written earlier policies for AT and AMRO.
 
 
 13
 Lumbermens was first notified of the pollution problem at the site by letter dated August 14, 1985. That letter attached copies of the complaints in the 1981 State and private lawsuits, informed Lumbermens that the State lawsuit was the subject of an interim consent order but that the private actions were still pending, and requested coverage on behalf of AT and AMRO.[2] In a November 11, 1985 letter, Lumbermens disclaimed coverage on the 1981 State claim, citing six reasons and stating, "[w]e reserve our rights to rely on additional reasons for disclaimer should they become apparent in the future." In a letter dated November 14, 1985, Lumbermens declined coverage for one of the 1981 private suits, stating two reasons, with the same reservation. Lumbermens did not include, in either letter, as a ground for disclaimer that the insureds had not promptly notified Lumbermens of the occurrence giving rise to the claim. On April 10, 1986, after receiving the State's intent-to-sue letters, the insureds' attorney sent another letter to Lumbermens, informing it of the intent-to-sue letters, enclosing copies of them, and requesting coverage for AMRO and David and Harry Moskowitz for defense and reimbursement of "these actions". By letter of May 5, 1986, Lumbermens again declined coverage, referring back to the November 11 letter, and stating "[t]here has bee [sic] no additional information to change our position since then." It was not until January 23, 1987, six weeks after Lumbermens had received a copy of the December 1986 CERCLA complaint, and three weeks after Lumbermens had attended a meeting of the various insurers, that Lumbermens first invoked the "untimely notice of occurrence" defense.
 
 DISCUSSION
 
 14
 I. Certification Pursuant to Fed.R.Civ.P. 54(b).
 
 
 15
 As a threshold matter, Atlantic moves to dismiss this appeal, contending that the district court "improvidently certified" its judgment pursuant to Fed.R.Civ.P. 54(b).[3]
 
 Rule 54(b) provides in relevant part:
 
 16
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 17
 "[A]n appellate court deciding whether to entertain an appeal certified under the Rule must determine first whether the judgment is eligible for Rule 54(b) certification and then whether the District Court acted within its discretion in directing entry of judgment." Steve's Homemade Ice Cream, Inc. v. Stewart, 907 F.2d 364, 365 (2d Cir.1990) (citing Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436-37, 76 S.Ct. 895, 900-901, 100 L.Ed. 1297 (1956), and Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7-8, 100 S.Ct. 1460, 1464-1465, 64 L.Ed.2d 1 (1980)).
 
 
 18
 In deciding whether the district court correctly determined that more than one claim exists for purposes of Rule 54(b), our scope of review is broad. See Curtiss-Wright [ ], 446 U.S. [at] 10 [100 S.Ct. at 1466] ...; Avondale Indus., Inc. v. The Travelers Indemnity Co., 887 F.2d 1200 (2d Cir.1989) [, cert. denied, --- U.S. ----, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990) ]; 10 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d Sec. 2655, at 42-43 (1983). The wide deference accorded a trial court under Rule 54(b) is usually reserved for its determination that no just cause for delay exists. See Curtiss-Wright, 446 U.S. at 10 [100 S.Ct. at 1466]. Therefore, we must examine de novo the relationship between plaintiffs' claims to determine whether they are sufficiently separate and distinct as to lend themselves to review as single units, or whether they are so interrelated and dependent upon each other as to be one indivisible whole.
 
 
 19
 Hudson River Sloop Clearwater v. Dept. of Navy, 891 F.2d 414, 417-18 (2d Cir.1989).
 
 
 20
 Here, it is clear that the order set out in Amro II was eligible for Rule 54(b) certification. The judgment completely and finally disposed of the third-party claims brought against Atlantic, Unigard, Lumbermens, and First State. Because a judgment is eligible for rule 54(b) certification where the claims for or against "one or more but fewer than all ... parties" are finally resolved, the District Court was free to consider certification.[4]
 
 
 21
 Atlantic's primary contention is that a second CERCLA action, one brought by the United States (the "U.S. action") against the same defendants and involving the same site as this appeal, was consolidated with this action (the "State action") by the District Court, and that the defendants in the U.S. action will inevitably implead their insurance carriers, just as they did here. Atlantic contends that "this dispute between the same insureds, the same insurers, and the same insurance policies regarding insurance coverage for the same polluted site ... will necessarily be back again to this court after the district court has made a ruling in the consolidated case [brought] by the United States." Atlantic's Affidavit in Support of Motion to Dismiss Appeal at 3-4. It is not clear whether Atlantic's attack is directed at the first requirement for 54(b) certification--that there be a judgment that finally dismisses one or more claims or parties--or the second--that there be no just reason for delay in entering judgment.
 
 
 22
 As to the first, we decline to hold that the possibility--or even the probability--that certain parties may, in the future, be impleaded in an action renders impermissible a 54(b) certification in a consolidated action in which a judgment finally determines all claims involving those parties. We have held that in the absence of a Rule 54(b) certification, there is a strong presumption that a judgment terminating all claims in one action but leaving unresolved claims in a consolidated action is not appealable. Hageman v. City Investing Co., 851 F.2d 69, 71 (2d Cir.1988). We need not decide today, however, what the permissible parameters for entry of a 54(b) judgment are in a consolidated action, because here none of the appellees are parties in the U.S. action. While there is a very high probability that these insurers will eventually be included either in that action as third-party defendants, or in a closely related action as the target of the United States as a judgment creditor, see N.Y.Ins.Law Sec. 3420(b), we do not believe that the contingent possibility of litigation should operate as a mechanical bar forbidding entry of a 54(b) judgment. Cf. Leonhard v. United States, 633 F.2d 599, 608-09 (2d Cir.1980) (judgment final even though claim unresolved as to one defendant, where that defendant was not served and did not appear, "since there is no basis for believing there will be any further adjudications in the action"), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Indeed, it is unclear how such a rule could be workable because a party seeking to avoid appellate review could throw up an interminable series of hypothetical roadblocks, each of which would have to be considered de novo by the appellate court.
 
 
 23
 The proper context for examination of contingent litigation, then, is not as part of this court's "juridical concerns," but rather as one of the factors the district court may consider in exercising its discretion as to whether there is "no just reason for delay."
 
 
 24
 "The function of the district court under the Rule is to act as a 'dispatcher.' [Sears, Roebuck, 351 U.S.] at 435 [76 S.Ct. at 899]. It is left to the sound discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. Ibid. This discretion is to be exercised 'in the interest of sound judicial administration.' Id. at 437 [76 S.Ct. at 900]."
 
 
 25
 Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. at 8, 100 S.Ct. at 1465. The district court in ruling on a 54(b) motion "must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' [Sears, Roebuck, 351 U.S.] at 438 [76 S.Ct. at 901]." Id. at 8, 100 S.Ct. at 1465.
 
 
 26
 Our role is a limited one when passing on the district court's determination that there is no just reason for delay. "[T]he proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." Id. at 10, 100 S.Ct. at 1466. The appellate "court should only disturb the district court's decision if it was 'clearly unreasonable,' Curtiss-Wright [ ], 446 U.S. [at] 10 [100 S.Ct. at 1466] ..., [although] the district court's discretion should be exercised 'sparingly,' Cullen [v. Margiotta], 811 F.2d [698,] 710 [ (2d Cir.), cert. denied, 483 U.S. 1021 [107 S.Ct. 3266, 97 L.Ed.2d 764] (1987) ], and should not be exercised 'as an accommodation to counsel,' Burr, 863 F.2d at 1074. See also Perez v. Ortiz, 849 F.2d 793, 796-97 (2d Cir.1988)." Shrader v. Granninger, 870 F.2d 874, 878 (2d Cir.1989).
 
 
 27
 As required in this circuit, e.g., In re Chateaugay Corp., 928 F.2d 63 (2d Cir.1991) (per curiam), the district court included a reasoned explanation of its conclusion that there is no just reason for delay. The court reasoned that if its ruling was
 
 
 28
 in error as to any or all of the insurance coverage issues, the insureds would have to incur expenses of defending the action without having the benefit of the complete benefit of the litigation insurance encompassed within an insurer's duty to defend. Moreover, certification will serve judicial economy by permitting this court to incorporate the issues of indemnity into any trial on the merits rather than at a later date. A resolution of the insurance issues will also likely assist in the resolution or settlement of the main action because it will give the plaintiffs a better understanding of the assets potentially available to assist in the remediation of the alleged pollution at the American Thermostat site.
 
 
 29
 Amro II, 745 F.Supp. at 840.
 
 
 30
 The district court was well within its discretion in certifying its judgment. While final rulings on third-party claims for contribution or indemnity are generally not suitable for certification because these claims may be rendered moot by a judgment for defendant in the main action, see 6 Moore's Federal Practice, p 54.37 at 54-239 n. 11 (1990), certification of a final ruling on a third-party claim requesting an insurer to supply a defense under an insurance policy is typically a permissible exercise of the district court's discretion. See Avondale, 887 F.2d at 1204. As to Atlantic's concern that the insurers might later be impleaded in the consolidated U.S. action, the district court was well aware of that possibility, see Exhibits A and C to Close Affidavit, and was within its discretion in concluding that the benefits of an immediate appeal outweighed the loss of judicial efficiency which might ensue if this appeal were to be followed by another one involving the same parties, the same site, and the same insurance policies.[5] As noted by the Supreme Court, even where "the district court conclude[s] that there [is] a possibility that an appellate court would have to face the same issue on a subsequent appeal, this might perhaps be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." Curtiss-Wright, 446 U.S. at 8 and n. 2, 100 S.Ct. at 1465 and n. 2 (citation omitted). Accordingly, we defer to the district court's judgment, in its role as "dispatcher," that the interests of "sound judicial administration" as well as fairness to the parties, mitigate in favor of certification. We thus have jurisdiction over this appeal and turn to the merits.
 
 II. Pollution Exclusion Clause
 
 31
 The liability insurance policies issued by Unigard, Atlantic and First State each contained an identical "pollution exclusion clause" which stated:
 
 
 32
 This policy shall not apply ... to any liability of any insured arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental. (emphasis added)
 
 
 33
 The issue here is the applicability of the "sudden and accidental" exception.
 
 
 34
 "It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." Fitzpatrick v. American Honda Motor Co., Inc., 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991) (cite omitted).If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend. (Ruder & Finn v. Seaboard Sur. Co., 52 N.Y.2d 663, 669-670, 439 N.Y.S.2d 858 [422 N.E.2d 518 (1981) ]. Moreover, when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.' (International Paper Co. v. Continental Cas. Co., 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873 [320 N.E.2d 619 (1974) ].
 
 
 35
 Technicon Electronics v. American Home Assurance Co., 74 N.Y.2d 66, 73-74, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050 (1989).
 
 
 36
 Thus, "[u]nder the terms of [the policies, the insurers] would be obligated to defend if there were any indication in [the underlying] complaint that '[the] discharge, dispersal, release or escape [of pollutants was] sudden and accidental.' " Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39, 41 (2d Cir.1991). The "sudden and accidental" exception is invoked only when the discharge is both sudden and accidental; if the discharge is either non-sudden or non-accidental, there will be no coverage. Technicon, 74 N.Y.2d at 75, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050.
 
 
 37
 The relevant allegations of the complaint are as follows:
 
 
 38
 16. The American Thermostat Corporation used, inter alia, the chemical solvent tetrachloroethylene in its manufacturing operations to clean and remove grease from thermostat parts and components.
 
 
 39
 17. Upon information and belief, from the early 1950's and continuing until discovery by plaintiff in 1981, A[merican] T[hermostat] disposed of, inter alia, waste tetrachloroethylene in several places on the site, including: the parking lot, sinks which discharged in septic systems on the site, and drains which discharged through a sewage pipe into a drainage ditch on the west edge of the site.
 
 
 40
 26. Defendants knew or should have known ... that the methods of disposal of these wastes resulted in their release into the environment, and that adequate measures had not been taken to prevent future releases and migration of the chemicals to offsite areas....
 
 
 41
 "Accidental"
 
 
 42
 Where the underlying complaint unequivocally alleges that the discharge of pollutants was intentional and deliberate, an insured may not claim the benefit of the sudden and accidental exclusion. "If the discharge was intentional ... there is no coverage.... [Where the] dumping of wastes was deliberate, the occurrence cannot be 'accidental' within the meaning of the policy." Technicon 74 N.Y.2d at 75, 544 N.Y.S.2d at 534, 542 N.E.2d at 1051. Thus the New York Court of Appeals has held that where the complained-of activity included "(1) 'burying drums containing the wastes,' (2) 'dumping waste liquids from 55-gallon drums into open pits and then disposing of the drums in the pit,' and (3) discharging 'wastes through a pipe into pits at the site,' " the insured was not entitled to coverage, because it was charged with intentional discharge of waste, and such "purposeful conduct" could not be considered "accidental". Powers Chemco v. Federal Ins. Co., 74 N.Y.2d 910, 911, 549 N.Y.S.2d 650, 651, 548 N.E.2d 1301, 1302 (1989).
 
 
 43
 Here, the complaint alleges that during some thirty years, AT "disposed" of its hazardous manufacturing waste by methods which the defendants "knew or should have known ... resulted in their release into the environment." The complaint specifies that the wastes were "disposed of ... in several places on the site, including: the parking lot, sinks which discharged into septic systems on the site, and drains which discharged through sewage pipe into a drainage ditch on the west edge of the side." Considered in toto, "[a] reasonable reading of the complaint leads to only one conclusion," Ogden Corp., 924 F.2d at 42, namely that the conduct alleged is that AT intentionally and deliberately disposed of its wastes, among other places, into "drains which discharged ... into a drainage ditch."
 
 
 44
 The allegation that defendants "should have known" (which we read in the insureds' favor as an allegation of mere negligence) that the wastes would be released into the environment does not, when considered in context, undercut the conclusion that the waste was deliberately discharged into the environment, or provide a possibility of coverage. "Disposing" connotes a deliberate and intentional activity, see EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co., 905 F.2d 8, 11 (2d Cir.1990). That certain of the defendants may not have known where the drains led or where the waste would end up, does not make the "release into or upon land ... or any watercourse" any more "accidental". See Technicon, 141 A.D.2d 124, 131, 533 N.Y.S.2d 91, 95 (2d Dep't 1988), aff'd, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989) (complaint's use of the word "negligence" to describe insured's behavior is insufficient to allege an "accidental" discharge of waste). The release of hazardous waste upon land or into a watercourse caused by the long-term industrial intentional disposal into a drain that leads to a ditch cannot be considered accidental merely because the disposer did not have an affirmative knowledge of where the drain led. In such a case the insured may lack specific intent, but the release into the environment cannot be considered "accidental". "[P]laintiff seeks to be indemnified for intentional discharges of waste, leading to the ultimate pollution of the environment. Such an 'occurrence,' resulting from purposeful conduct, cannot be considered 'accidental' under [the] analysis in Technicon." Powers Chemco, 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302.
 
 
 45
 "Sudden"
 
 
 46
 Even were we to conclude that it was possible to read the underlying complaint as including allegations of accidental discharge of wastes, we would still find no coverage here, because the complaint plainly does not allege a "sudden" release. The complaint alleges that "from the early 1950's and continuing until discovery by plaintiff in 1981," AT discharged its waste tetrachloroethylene into the environment. "For a release or discharge to be sudden, it must 'occur[ ] over a short period of time.' Technicon, 141 A.D.2d 124, 137, 533 N.Y.S.2d 91, 99 (2d Dep't 1988), aff'd, 74 N.Y.2d 66, 544 N.Y.S.2d 531 [542 N.E.2d 1048] (1989)...." Ogden Corp., 924 F.2d at 42;[6] see also EAD, 905 F.2d at 11 (allegation that "EAD, throughout its operation from March 1977 through 1983, caused the release into the environment" of radioactive waste, is an allegation that EAD "continuously ... polluted"). The underlying complaint here, alleging that an industrial operation disposed of its manufacturing waste by certain improper methods for close to thirty years, cannot be understood to allege a "sudden" release.
 
 
 47
 The insureds contend that the complaint does not negate the possibility that waste from the AT plant was responsibly placed in proper containers, those containers placed in the parking lot and in specially designed sinks and drains, and that release into the environment occurred only upon the sudden and accidental rupture of one or more of these containers. While it is true that an insurer "can be excused from its duty to defend only if it can be determined as a matter of law that there is no possible basis in law or fact upon which the insurer might be held to indemnify" the insured, Avondale, 887 F.2d at 1205, we decline to obligate an insurer to extend coverage based on a reading of the complaint that is linguistically conceivable but tortured and unreasonable. Taken as a whole, and reasonably considered, the complaint is not susceptible to the reading which the insureds seek to impose. The insurers are thus entitled to rely on the pollution exclusion clause and have no obligation to defend or indemnify appellants here. Accordingly, we affirm the district court's judgment in favor of Unigard and First State, and the judgment in favor of Atlantic, on the basis of the pollution exclusion clause.
 
 
 48
 III. Lumbermens' Waiver of the Untimely Notice Defense
 
 
 49
 The District Court held that the insureds did not comply with their obligation promptly to notify Unigard and Lumbermens of the occurrence, and based its grant of summary judgment in part on that ground. Because we have affirmed the District Court's dismissal of the claim against Unigard on the basis of the pollution exclusion clause, we need address the untimely notice issue with respect only to Lumbermens, whose policy did not include the pollution exclusion clause.
 
 
 50
 The district court found that Lumbermens had no duty to indemnify or defend because the insureds did not comply with the policy's notice-of-occurrence requirement.[7] The district court also rejected the insureds' contention that Lumbermens had waived its late-notice defense to coverage. For the reasons that follow, we reverse the district court on the latter conclusion, and hold that Lumbermens waived its late-notice defense. We therefore need not address the question of whether the timing of the insureds' notice to Lumbermens was in violation of their obligations.
 
 
 51
 There is no dispute that the insureds first notified Lumbermens about the pollution problems at the site in August 1985 (enclosing copies of the 1981 complaint and 1983 interim consent order), and notified it again on April 10, 1986 (enclosing copies of the State's intent-to-sue letters); that Lumbermens sent at least three letters which declined coverage for several reasons, but never mentioned untimely notice; and that Lumbermens did not assert the untimely notice-of-occurrence defense until January 1987, after it had received a copy of the State complaint in this action, and some seventeen months after it had received the first notice from appellants. (See supra, at 1423.)
 
 
 52
 The district court found as a matter of law that Lumbermens did not waive its late-notice defense. The court reasoned that because a liability insurer's duty to defend is based upon the allegations in the underlying complaint, Lumbermens' duty to defend the state CERCLA action did not arise until the complaint was forwarded to Lumbermens in December 1986. The court then held that "[i]t is not rational to infer that Lumbermens waived a defense against this duty to defend, before that duty ever arose." Amro I, 697 F.Supp. at 106 (emphasis in original). On reconsideration, the court reiterated, "[i]f the duty to defend is based on the allegations of the complaint, it would not be possible for an insurer, in good faith, to determine whether it could reasonably raise a defense to coverage until after it had received and reviewed the complaint." Amro II, 745 F.Supp. at 836.
 
 
 53
 This reasoning, however, confuses two distinct obligations of the insureds under the Lumbermens liability policy. The notice of occurrence provision requires that "[i]n the event of an occurrence, written notice ... shall be given ... [to the insurer] as soon as practicable." This notice of occurrence condition is separate and distinct from the notice of claim provision which requires that the insureds notify the insurer "immediately" if "claim is made or suit is brought against the insured," and forward a copy of the summons or notice. See Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044, 1053-55 (S.D.N.Y.1990) (distinguishing between notification of occurrence and notification of claim), aff'd, 929 F.2d 62 (2d Cir.1991) (per curiam).
 
 
 54
 While it may not be possible for an insurer acting in good faith to assert certain defenses to coverage before a complaint is filed--including a late-notice-of-claim defense--we see nothing that would prevent an insurer from waiving certain other defenses--including late-notice-of-occurrence--at a much earlier stage. We see nothing irrational or impossible in the conclusion that an insurer might choose to waive a defense or defenses at any time after it had knowledge that the defense might be applicable; one can waive a privilege in advance of a need for its exercise. Here, Lumbermens was first notified in August 1985 of an (at least) four-year old "occurrence". There was no need for Lumbermens to wait until the filing of the complaint some sixteen months later, before making its decision whether to assert a late-notice-of-occurrence defense, the availability of which was obvious and blatant from the face of the notice.[8] That certain defenses perhaps could not be evaluated prior to an examination of the complaint is irrelevant to Lumbermens' ability to assess--and waive if it so chose--its late-notice-of-occurrence defense within a reasonable time after receipt of that notice.[9]
 
 
 55
 The timing of the subsequent claims filed against the insureds is not decisive here. Just as an insured who fails to provide timely notice of occurrence to its carrier risks being denied coverage by that carrier as to any claim that arises out of that occurrence, see Olin Corp., at 1054-55, so, too, in the circumstances before us, do the consequences of an insurers' waiver of a late-notice-of-occurrence defense follow the occurrence, not any particular claim of which the insurer may or may not have been aware at the time of waiver.
 
 
 56
 Our conclusion that Lumbermens' was capable of asserting its late-notice-of-occurrence disclaimer even before the complaint was filed, is bolstered by the fact that several of the other insurers which were informed in April 1986 of the State intent-to-sue letter were able promptly to assert late-notice disclaimers, as well as other grounds for refusing coverage. Lumbermens does not offer any plausible explanation why it could not have behaved similarly, nor does it contend that the other insurers' disclaimers were improper or asserted in bad faith.[10]
 
 
 57
 Having concluded that Lumbermens was capable of waiving its late-notice-of-occurrence defense, we now must determine whether it did so. Appellants contend that Lumbermens waived the defense when, in its letter of May 5, 1986, responding to the insureds' April 10 letter which had referred to and enclosed copies of the intent-to-sue letter (which presaged this action), Lumbermens reiterated, by reference to its November 11 letter, the six grounds for denial of coverage--again without reference to the late-notice defense.[11]
 
 
 58
 In the insurance context, New York law defines waiver as "a voluntary and intentional relinquishment of a known right." Albert J. Schiff Associates, Inc. v. Flack, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980). Waiver may be found "where there is direct or circumstantial proof that the insurer intended to abandon the defense." Id. (citing Kiernan v. Dutchess County Mutual Ins. Co., 150 N.Y. 190, 195, 44 N.E. 698 (1896)). An "implied waiver ... exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances...." Kiernan at 195, 44 N.E. at 699. An irrevocable waiver may be found where "the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to 'abandon or not to insist upon the particular defense afterward relied upon'...." Id. (citation omitted).
 
 
 59
 The question we must address is whether, under New York law, waiver of the late notice defense is conclusively established by Lumbermens' assertion of several grounds for disclaiming coverage, without asserting the late notice grounds, in its November and May letters, or whether Lumbermens' intent is a question that remains open for the trier of fact.
 
 
 60
 As we held in Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082, 1090-91 (2d Cir.1986), New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense. The insureds' here are thus entitled as a matter of law to prevail on their claim of waiver.
 
 
 61
 Support for this conclusion comes from several decisions of the New York Court of Appeals. In General Accident Insurance Group v. Cirucci, 46 N.Y.2d 862, 864, 414 N.Y.S.2d 512, 514, 387 N.E.2d 223, 225 (1979) (per curiam), the court stated that "[a]lthough, under the facts of this case a disclaimer might have been premised on [a certain ground], since this ground was not raised in the letter of disclaimer, it may not be asserted now." The court went on to offer an explanation for this per se rule:
 
 
 62
 Although an insurer may disclaim coverage for a valid reason ... the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the insurer's responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters.
 
 
 63
 Id. That the court did not see a need to discuss any of the particular facts or circumstances of the situation, in support of its conclusion that the insurer had waived, is a strong indication that no other factors were relevant, and that a per se rule was applied.
 
 
 64
 In Appell v. Liberty Mutual Ins. Co., 22 A.D.2d 906, 906, 255 N.Y.S.2d 545, 547 (2d Dep't 1964), aff'd without opinion, 17 N.Y.2d 519, 267 N.Y.S.2d 516, 214 N.E.2d 792 (1966), the Court of Appeals affirmed a decision holding an insurer had waived its late-notice-of-occurrence defense because its original disclaimer did not mention that defense. The opinion of the Appellate Division, like the opinion in Cirucci, discusses no other factors, and similarly compels the conclusion that a per se rule was applied.
 
 
 65
 More recently, in Albert J. Schiff Associates, Inc. v. Flack, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980), the court stated that "though an insurer's [express] waiver of forfeiture be upon one ground, it is deemed to embrace unspecified grounds for forfeiture as well." In support of this proposition, the court cited Appell, adding a parenthetical "(insurer disclaimed on the sole ground of insured's [non-cooperation], thereby waiving late notice of accident)," Schiff, at 698, 435 N.Y.S.2d at 975, 417 N.E.2d at 87 (emphasis added), and Pensky v. Aetna Life & Casualty Co., 84 Misc.2d 270, 375 N.Y.S.2d 780 (Queens Co.Sup.Ct.1975), reversed, 55 A.D.2d 640, 390 N.Y.S.2d 162 (2d Dep't 1976), also adding a parenthetical, "(insurer rejected claim for failure of insured to give notice in writing, thus waiving failure of injured party to give reasonable notice)". Schiff, 51 N.Y.2d at 698, 435 N.Y.S.2d at 975, 417 N.E.2d at 87 (emphasis added).
 
 
 66
 This court has unequivocally recognized the rule set out in this line of cases and has previously held that "[i]t is settled that '[w]hen one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon a specific ground, all other grounds are waived.' " Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082, 1090 (2d Cir.1986) (quoting 16C Appleman & Appleman, "Insurance Law and Practice," Sec. 9260 at 393 (1981)).
 
 
 67
 Lumbermens cites Commercial Union Insurance Co. v. International Flavors & Fragrances, Inc., 822 F.2d 267, 273-74 (2d Cir.1987), as support for the proposition that appellants here have failed to meet the burden of proving Lumbermens' intent to waive. Lumbermens' reliance on Commercial Union is misplaced, however. Commercial Union did not address the situation here--an insurer making a disclaimer of coverage on certain grounds while leaving another ground unmentioned. There, the insured supplied notice of the occurrence simultaneously with notice of the claim against it. The insurer undertook a preliminary defense of the action--the insured repeatedly being informed that the insurer had not yet determined whether it would extend coverage. Within ten weeks of receipt of the notice, the insurer informed the insured that it would not provide coverage due to "late notice and other policy violations." Commercial Union, 822 F.2d at 270. The question, therefore, was whether the tentative defense constituted a waiver of the late notice. Id. at 273.
 
 
 68
 In Commercial Union, we addressed the issue of waiver in a procedural context equivalent to a motion for summary judgment sought by the insured. It is not remarkable then that we found for the insurer on the waiver issue, as we determined that "[t]here is no evidence that C[ommercial] U[nion] ever intended to abandon a defense based on a violation of the notice-of-occurrence provision." Id. at 274 (emphasis added). Here, in sharp contrast, Lumbermens' assertion of several grounds for disclaimer without mentioning late notice, provides ample "evidence that the insurer intended to abandon that defense," Id, as required by Commercial Union. Indeed, as we have just discussed, under New York law, the act by an insurer of disclaiming on certain grounds but not others is deemed conclusive evidence of the insurer's intent to waive the unasserted grounds. Thus, the general rule stated in dictum in Commercial Union at 273--that "waiver is a proper issue for the trier of fact,"--while compelling in the factual context of that case, is not applicable here where New York's "constructive waiver" rule is invoked by the content and circumstances of Lumbermens' disclaimer, and requires that waiver be determined as a matter of law.[12]
 
 
 69
 Because New York law conclusively deems an insurer to have intended waiver in the circumstances obtaining here, the self-serving affidavit from one of Lumbermens' claims examiners, stating, in essence, "Lumbermens did not intend to waive the late-notice defense," is immaterial and does not necessitate a trial on the waiver issue. We note that we do not address here the case where the insurer's disclaimer of coverage based on specified grounds is accompanied by an express and unequivocal statement that other grounds for disclaimer are reserved and not waived.[13] We hold that in the circumstances before us Lumbermens must be deemed to have waived its late-notice defense, and may not base denial of coverage on that defense.
 
 
 70
 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Kenneth Conboy, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The district court actually granted partial summary judgment in favor of Atlantic, declaring that Atlantic had no obligation to indemnify the insureds. According to the district court, "Atlantic's motion is not with respect to the duty to defend because it has entered into an agreement with the insureds to pay for all future defense costs." Amro II, 745 F.Supp. at 835 n. 4
 
 
 [2]
 The Lumbermens policy covered occurrences for the year 1969
 
 
 [3]
 While Atlantic had itself moved, below, for certification of an order for interlocutory review pursuant to 28 U.S.C. Sec. 1292(b), see Amro II, 745 F.Supp. at 835, it has evidently now reconsidered its desire for an immediate appeal. Because we have no jurisdiction over an appeal from an improperly certified partial judgment, we must satisfy ourselves that certification was proper, without regard to whether Atlantic could be held to have waived its objection
 
 
 [4]
 We have held in some circumstances that where a single claim is asserted against more than one defendant, it is an abuse of discretion for the district court to enter as a 54(b) judgment an order dismissing the claim against one of the defendants. Burr by Burr v. Ambach, 863 F.2d 1071, 1074-75 (2d Cir.1988), vacated on other grounds, 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560, reaffirmed, 888 F.2d 258 (2d Cir.1989). Underlying that ruling was a concern that a decision on appeal as to one party might prejudice the proceedings in the district court as to the other party on the same claim, as well as considerations of judicial economy. Id. at 1075. Here, however, "[t]he parties have agreed that the same pollution exclusion clause, which [the district] court found operates to relieve Unigard, First State, and Atlantic of any duty to provide further coverage, is applicable to all of the other third-party defendant insurance companies." Amro II, 745 F.Supp. at 840. As a practical matter, therefore, there is no concern here with prejudice or judicial economy with respect to the claims against the four insurers who remain before the district court. In any event, we rely on the "parties" prong of rule 54(b) for our jurisdiction and need not address, in the first step of our 54(b) analysis, whether the insureds' third-party complaint states separate claims against each insurer, or what effect should be given the agreement which practically, but not formally, serves as a judgment in favor of the four insurers who remain in district court
 The characterization of the grant of summary judgment in favor of Atlantic as "partial" is misleading in light of the fact that no issues remain to be decided regarding the claims against Atlantic. See n. 1, supra. The district court entered judgment in favor of Atlantic on the indemnity issue, and, as Atlantic's answer reveals, the defense issue is not being contested.
 
 
 [5]
 Of course, such an appeal would not necessarily involve the same analysis or result, as the underlying complaints, determinative of the pollution exclusion clause issue, differ between the State action and the U.S. action, as might the facts determinative of the notice issue
 
 
 [6]
 We note that the full quote excerpted in Ogden is: "A 'sudden and accidental' event is one which is unexpected, unintended and occurs over a short period of time." On appeal from the Second Department, the New York Court of Appeals affirmed solely on the basis of the "accidental" requirement, and did not address the issue of "suddenness," nor whether a long-term release following an unintentional, unexpected, and undiscovered rupture or explosion could ever be considered "sudden"
 
 
 [7]
 The notice of occurrence provision required that "[i]n the event of an occurrence, written notice ... shall be given ... [to the insurer] as soon as practicable."
 
 
 [8]
 We express no opinion whether the defense would ultimately have proven successful
 
 
 [9]
 Commercial Union Insurance Co. v. International Flavors & Fragrances, Inc., 822 F.2d 267, 274 (2d Cir.1987) does not compel a different result. In Commercial Union, the insured did not supply notice of the occurrence until it forwarded the complaint to its insurer. We held that the insurer was not obligated to decide immediately, and with no information other than the allegations of the complaint, whether notice of occurrence was untimely, where an investigation was necessary to establish what was known by the insured's officers at various times, and where the declination of coverage was made promptly thereafter. The facts here are clearly distinguishable
 
 
 [10]
 The statement in an affidavit by a Lumbermens claims examiner that Lumbermens did not believe the April 10, 1986 notice letter from the insureds was requesting coverage with respect to the intent-to-sue letter is not entitled to any consideration in light of the fact that the intent-to-sue-letter was referred to and enclosed
 That statement is, in any event, irrelevant. Whether or not Lumbermens understood its assertion of defenses to be directed only to the 1981 complaints, any waiver of the late-notice-of-occurrence defense inferable from the disclaimer letters is a waiver of that defense with respect to any claims which arise from the occurrence for which late notice was waived. See Olin Corp., 743 F.Supp. at 1055. Here, it is uncontrovertible that the same occurrence gave rise to the 1981 complaints, the March 1986 intent-to-sue letter, and the December 1986 State CERCLA complaint.
 
 
 [11]
 Appellants do not rely on the doctrine of estoppel, but solely on waiver. See Albert J. Schiff and Associates, Inc. v. Flack, 51 N.Y.2d 692, 697-99, 435 N.Y.S.2d 972, 974-75, 417 N.E.2d 84, 86-87 (distinguishing estoppel and waiver); Kiernan v. Dutchess County Mutual Ins. Co., 150 N.Y. 190, 194-95, 44 N.E. 698, 699-700 (1896) (same); 16B Appleman & Appleman, Insurance Law & Practice, Sec. 9081 (rev'd ed. 1981) (same)
 
 
 [12]
 Lumbermens also points to Guberman v. William Penn Life Ins. Co., 146 A.D.2d 8, 538 N.Y.S.2d 571 (2d Dep't 1989). Guberman holds that an insurer is barred from relying on a defense which it failed to assert in a disclaimer letter, only when the insured can demonstrate that she has suffered prejudice. Although the opinion is thoughtful and considered, we decline to follow it for several reasons. First, the opinion, which relies on the many out-of-state cases which impose the prejudice requirement where waiver is claimed, seems not merely to extend, but to contradict previous New York law as pronounced by the Court of Appeals and discussed above. Second, the opinion blurs the distinction between waiver and estoppel, a distinction the Court of Appeals has attempted to preserve, see Albert J. Schiff, 51 N.Y.2d at 697-98, 435 N.Y.S.2d at 974-75, 417 N.E.2d at 86-87, and mis-interprets Schiff 's explanation of the distinction, while citing to it. Guberman, 146 A.D.2d at 11, 538 N.Y.S.2d at 573. While Guberman is not entirely clear on this score, it appears that it intends the prejudice rule to apply both in cases of waiver and estoppel, a result which would essentially collapse the two concepts into one. Lastly, it is not clear how much authority Guberman commands even within the Second Department, as a later-decided case, Fireman's Fund Ins. Co. v. Freda, 156 A.D.2d 364, 365-66, 548 N.Y.S.2d 319, 321 (2d Dep't 1989), applies the bright-line "constructive waiver" rule, citing to Cirucci, without mention of Guberman. In these circumstances, we are reluctant to predict that the Court of Appeals, if presented with the opportunity, would affirm the rule set out in Guberman, with respect to waiver
 
 
 [13]
 The phrase contained in Lumbermens' August 11, 1985 disclaimer letter--"[w]e reserve our rights to rely on additional reasons for disclaimer should they become apparent in the future"--cannot be read to preclude waiver in the circumstances here, as the late-notice defense did not "become apparent" after the State CERCLA complaint was filed, but rather was evident at the time Lumbermens issued its disclaimer letter