Nancy Allen STEINBERG,
M.D., Plaintiff,

v.

THE PAUL REVERE LIFE
INSURANCE COMPANY,
Defendant.

No. 98 Civ. 0686 (RLC).

United States District Court,
S.D. New York.

Aug. 3, 1999.

Law Offices of Evan Sarzin, P.C., New York City (Evan Sarzin, of counsel), for Plaintiff.

Wright, Pindulic & Hamelsky, LLP, Paramus, NJ (Robert T. Pindulic, of counsel), for Defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Nancy Allen Steinberg, M.D., ("Steinberg") initiated this action to recover disability benefits under an insurance policy that she holds with defendant The Paul Revere Insurance Company ("Paul Revere"). Now before the court is defendant's motion for summary judgment, and plaintiff's cross-motion for summary judgment.

## BACKGROUND

On November 10, 1987, Paul Revere issued to Steinberg, a resident of New York, a disability income policy that provided for the payment of monthly benefits in the event of a total disability arising from injury or illness. In 1991, Steinberg, a board-certified radiologist at the time, underwent a routine eye examination for glaucoma. During the examination, the ophthalmologist did not find glaucoma, but did find abnormalities in both of plaintiff's eyes. A subsequent Magnetic Resonance Imaging ("MRI") performed in January, 1991, indicated multiple, abnormal lesions in her brain. Because Steinberg had lived in Connecticut prior to the MRI, her physician surmised that she had contracted Lyme disease and set a course of treatment for that disease.

In addition to the abnormalities in her eyes, plaintiff began to experience an increasing degree of fatigue and weakness that she believed to be symptomatic of Lyme disease. In 1994, Dr. Eileen Draga ("Dr.Draga"), an ophthalmologist, detected a loss of vision in Steinberg's right eye. Dr. Draga determined that due to a hole

on the macula of the eye, Steinberg effectively had no vision in the core of her right eye. Aware of Steinberg's condition and the nature of her work, Dr. Draga opined that plaintiff was disabled from performing radiology. However, despite her vision impairments, deteriorating physical condition and Dr. Draga's determination that she was disabled, plaintiff continued to work full-time as a radiologist.

In 1995, Steinberg was named as a co-defendant in three medical malpractice lawsuits. At that time, Steinberg decided that she could no longer perform radiology. In May, 1995, plaintiff advised her employees that she could no longer work. On July 8, 1996, Steinberg submitted a Claimant's Statement For Disability Benefits and Attending Physician's Statement ("July 8 Physician's Statement"), seeking benefits from May 13, 1995, her last day of employment. (Defendant's Ex. 8). On the July 8 Physician's Statement, Dr. Draga diagnosed Steinberg as having a macular hole in her right eye, causing visual impairment. Neither Steinberg nor Dr. Draga reported her fatigue symptoms, however.

In a letter to Steinberg dated July 17, 1996, Paul Revere wrote, in pertinent part, "We would like to remind you that your policy requires notification of a claim within 30 days from the beginning of your disability. Since we were not notified within this time period, we are in the process of forwarding your file to our Field Claim Representative.... Although we are not certain of the exact schedule, our representative will be contacting you in the near future." (Defendant's Ex. 9). In response, Steinberg stated in a letter dated August 8, 1996, that she did not file her claim within 30 days because she was unaware of the time limitations in the insurance policy. (Defendant's Ex. 10). Plaintiff also noted that she was attempting to improve her vision through visual training and that she had tried to work as long as possible before filing a claim.

In a letter dated August 30, 1996, Paul Revere stated in relevant part:

Please be advised that Section 9.2 of your contract entitled 'Written Notice of Claim' outlines that written notice of claim must be given to us within 30 days after a covered loss starts or as soon as reasonably possible. Should you wish to submit a claim for benefits under the provisions of your contract, we ask that you do so within 30 days after a covered loss starts so we may be of the best possible service to you.

We have gathered additional medical information regarding your condition from which you are claiming disability benefits for. It appears that your condition has not changed significantly from 1994 and was not preventing you from working until May 1995. Furthermore, it appears that your reasons for leaving your current position are not for health reasons according to the information received from your employer. Also, it appears that your condition has not warranted any regular treatment since you stopped working in May 1995.

In light of the above, we regret that we are unable to be of service to you for consideration of disability benefits as it appears that you do not fit the definition of total disability as outlined in your policy.

... Should you have any additional medical information which we are not aware of, kindly submit this information to us as soon as possible so we may take further action on your claim.

(Defendant's Ex. 11).

On November 18, 1996, Steinberg submitted another Claimant's Statement For Disability Benefits and Attending Physician's Statement ("November 18 Physician's Statement"). (Defendant's Ex. 13). On the November 18 Physician's Statement, Dr. John Halperin ("Dr.Halperin") set forth a primary diagnosis of demylinating disease and a secondary diagnosis of Lyme disease. With regard to the demylinating disease diagnosis, Dr. Halperin was apparently referring to Multiple Sclerosis, the disease from which Steinberg is cur-

rently suffering from. Dr. Halperin also indicated on the Physician's Statement that his initial consultation with Steinberg occurred on November 6, 1996, and that the symptoms of the diseases first appeared on October 14, 1996.

On May 22, 1997, Steinberg was examined by Dr. Robert Malkin ("Dr.Malkin") at the request of Paul Revere. Based on his examination and a review of her medical records, Dr. Malkin confirmed that plaintiff's visual impairments rendered her disabled from her job as a radiologist. (Plaintiff's Ex. G). After receiving Dr. Malkin's report, Paul Revere initiated monthly payments of $6000, as per the terms of the insurance policy, retroactive to November 6, 1996. Plaintiff continues to receive such disability benefits to this date.

Plaintiff filed suit in New York state court on December 18, 1997, seeking benefits for the 18 month period beginning on May, 13, 1995 to November 6, 1996. The case was subsequently removed to this court on defendant's motion. On September 15, 1998, defendant moved for summary judgment. Plaintiff's cross-motion for summary judgment was filed on November 19, 1998.

## DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c), F.R. Civ. P., summary judgment is rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." "[T]he substantive law will identify which facts are material ... [and] [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

1. Plaintiff's reliance on *Panepinto v. New York Life Ins. Co.,* 90 N.Y.2d 717, 665 N.Y.S.2d 385, 688 N.E.2d 241 (1997), is misplaced. In *Panepinto,* plaintiff had filed a timely notice of claim for disability benefits. Defendant New

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. "No Prejudice" Rule

■ Under New York law, compliance with a notice of claim provision in an insurance policy is a condition precedent to an insurer's liability under the policy. *See State of New York v. Blank,* 27 F.3d 783, 793 (2d Cir.1994) ("We have previously observed that, under New York law, an insured has an obligation to comply with notice-of-occurrence and notice-of-claims provisions of an insurance policy."); *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2d Cir.1987). Paul Revere asserts that Steinberg is not entitled to benefits for the 18 month period because her notice of claim was more than one year late under the terms of her insurance policy.

■ Steinberg does not dispute that her notice of claim for benefits during the 18 month period was untimely; rather, she argues that Paul Revere must demonstrate that it was prejudiced by her late notice of claim before disallowing benefits on this basis. However, it is well-settled that late notice is a complete defense whether or not the insurance company was prejudiced by the delay in disputes between an insured and its primary insurer. *See Blank,* 27 F.3d at 797 (contrasting cases involving co-insurers and reinsurers in which New York courts have refused to follow the "no prejudice" rule); *AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.,* 84 F.3d 622, 624–25 (2d Cir.1996) ("The no prejudice rule relieves the burden on the insurer to prove that prejudice resulted from the insured's failure to provide notice."). Contrary to plaintiff's suggestion, the "no prejudice" rule applies in full force to actions seeking to recover disability benefits.[1] *See Gresham v. American Gen.*

York Life Insurance had thereby made monthly disability payments pursuant to the terms of the policy for three years. *See id.* at 386, 688 N.E.2d 241, 90 N.Y.2d 717. Defendant subsequently terminated benefits after its

*Life Ins. Co. of New York*, 135 A.D.2d 1121, 523 N.Y.S.2d 282, 282 (1987) (holding that plaintiff's unexcused delay in serving notice of claim precluded recovery on disability policy); *Abrams v. Standard Sec. Life Ins. Co.*, 88 A.D.2d 578, 449 N.Y.S.2d 804, 805 (1982) (same). Plaintiff's argument that Paul Revere must demonstrate prejudice is plainly without merit.

## C. Excusable Delay

■ Under New York law, an insured's duty to provide notice to the insurer is triggered when "circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim." *See Commercial Union Ins. Co.*, 822 F.2d at 272 (collecting cases). *See also Leonzo v. First Unum Life Ins. Co.*, 1994 WL 455203, *2 (S.D.N.Y. August 23, 1994) (Duffy, J.) (disability insurance action). However, an insured's failure to provide timely notice may be excused if the insured has offered a valid excuse for the delay.[2] *See Blank*, 27 F.3d at 795. *See, e.g., Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143–44 (2d Cir.1995) (holding delay in providing notice was excusable because insured had relied on opinion of insurance broker that it was not covered by the policy). It is the burden of the insured to prove that the delay in notifying the insurance company was excusable. *See Olin Corp. v. Insurance Co. of North America*, 966 F.2d 718, 724 (2d Cir.1992). Moreover, while the question of whether delay is excusable is generally a question of fact for a jury to decide, "a delay may be unreasonable as a matter of law when either no excuse is advanced or a proffered reason is meritless." *Id.*

■ In the instant case, Steinberg states in her affidavit that based on Dr. Draga's diagnosis of Lyme disease, which was later found to be incorrect, she believed her symptoms to be temporary and not permanently disabling. (Steinberg Aff. ¶ 5–9). Thus, according to plaintiff, she did not file a notice of claim in May, 1995, because she was mistakenly under the belief that she suffered from Lyme disease and was unaware that her symptoms in fact stemmed from Multiple Sclerosis, which is incurable. (Steinberg Aff. ¶ 5–9).

However, while the court is to draw all inferences in favor of a non-movant on a summary judgment motion, it cannot ignore the evidence that Steinberg was aware that in Dr. Draga's opinion her visual impairments, regardless of their cause,

doctor determined that plaintiff was no longer disabled. *See id.* Approximately three and a half years after the notice of benefits termination, plaintiff commenced suit in New York state court. *See id.* The resolution of the case turned on the interpretation of a statutorily-mandated three year statutes of limitations clause in the insurance policy. *See id.* The Court of Appeals, in holding that the limitations period commenced upon the termination of the disability as an objective, medical fact, conceded that its interpretation of the clause could postpone the commencement of the limitations period indefinitely while the insured remains continuously disabled. *See id.* at 388, 688 N.E.2d 241, 90 N.Y.2d 717. However, the Court noted that in situations where the insurer was actually prejudiced by the delay in filing suit, such claim could be barred by principles similar to those underlying the doctrine of laches. *See id.*

However, nothing in *Panepinto* suggests that the Court of Appeals intended to abandon the "no prejudice" rule with regard to initial notices of claim. Indeed, compliance with notice of claim provisions promotes the important policy goal of enabling "insurers to make a timely investigation of relevant events and exercise early control over a claim." *See Commercial Union Ins. Co.*, 822 F.2d at 271. The Court in *Panepinto* was not confronted with such a concern as the plaintiff in that case had in fact given a timely initial notice of claim. *See Panepinto*, 665 N.Y.S.2d at 386, 688 N.E.2d 241. Thus, as evident from a close reading of facts in *Panepinto*, the Court's statement suggesting that an insurer must demonstrate actual prejudice in order to bar a claim is not applicable to the situation in the instant case.

2. Steinberg's insurance policy also provides that notice be given as soon as reasonably possible, if not within 30 days of the onset of a covered loss. (Defendant's Ex. 1 at 16).

rendered her disabled from her job as a radiologist. Neither can the court ignore the fact that the explanation Steinberg presented in her affidavit contradicts her prior deposition testimony. In her deposition, Steinberg indicated that she did not file a claim in May, 1995, because she was concerned that such a claim would have negatively affected her defense in the malpractice suits against her. (Steinberg Dep. at 96–97). Indeed, she testified that she "just was petrified that [a claim for disability] would be found and shown at trial and that would be the end...." (Steinberg Dep. at 97). Steinberg also admitted that she gave a different explanation to a representative of Paul Revere when the representative asked why her notice had been late: "I was very afraid if somebody wrote it or anything. Yes, I didn't tell your representative.... I didn't want it to be said that I couldn't see. Your representative came to see me, [but] I didn't want to tell him about the malpractice case." (Steinberg Dep. at 97). In addition, when asked if there was any other reason while she did not file a notice of claim for over a year, Steinberg replied: "That was enough. It felt like enough to me." (Steinberg Dep. at 98).

▮ The court is mindful that in determining a summary judgment motion, it "is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *See Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995) (collecting cases). At the same time, however, it is also well-settled that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *See Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir.1996) (" 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' "); *Mack v. United States,* 814 F.2d 120, 124

(2d Cir.1987) (noting that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment). Accordingly, the court holds that Steinberg has not created a material issue of fact as to whether her reason for filing a late notice of claim was excusable. Steinberg's concerns regarding the impact of a disability claim on the pending malpractice litigation against her simply cannot, as a matter of law, constitute a valid excuse for her untimely notice.

### D. Waiver

▮ Under New York law, waiver of a defense is proven by direct or circumstantial evidence that the insurer voluntarily and intentionally relinquished a known right. *See State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1431 (2d Cir.1991). Moreover, "an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." *Id. See also Luria Bros. & Co. v. Alliance Assur. Co.,* 780 F.2d 1082, 1090 (2d Cir. 1986) (" '[W]hen one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon a specific ground, all other grounds are waived.' ").

▮ In the instant action, plaintiff contends that Paul Revere waived the late notice defense by disclaiming coverage on the ground that she was not disabled in its August 30, 1996 letter. However, Paul Revere's statement on the August 30, 1996 letter that it was denying coverage because plaintiff did not "fit the definition of total disability" must be considered in context. First, it is undisputed that in Paul Revere's initial disclaimer letter of July 6, 1996, it clearly stated that plaintiff had not made a timely notice of claim. Second, the August 30, 1996 letter once again mentions the fact that claims must be filed within 30 days or as soon as reasonably possible

after the onset of covered loss. Given this evidence, the court finds that no reasonable factfinder could conclude that Paul Revere intentionally and voluntarily abandoned a late notice defense. *Cf. AMRO Realty Corp.,* 936 F.2d at 1432 (holding insurance company's assertion of several grounds for disclaimer without mentioning late notice as waiver of defense).

 Steinberg also suggests that Paul Revere waived the late notice defense by conducting a medical investigation of her condition after her November 18, 1996 claim submission, and by subsequently determining that she was entitled to disability benefits. The court declines to adopt plaintiff's reasoning. Such a holding would encourage insurance companies to decline otherwise valid, timely claims in fear of waiving defenses to previously submitted untimely claims. Lastly, while Steinberg repeatedly asserts that Paul Revere's commencement date is arbitrary, the selection of November 6, 1996 plainly comports with the terms of the insurance policy.[3]

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. Plaintiff's complaint is hereby dismissed in its entirety. Defendant's motion for attorney's costs and fees is denied.

**IT IS SO ORDERED.**

---

3. The insurance policy provides, " 'Total disability means that because of Injury or Sickness: a. You are unable to perform the important duties of Your Occupation; and b. You are under the regular and personal care of a

Physician.' " (Defendant's Ex. 1 at 6). Although Dr. Halperin determined that the onset of plaintiff's symptoms was October 14, 1996, she was first under Dr. Halperin's regular care on November 6, 1996.