**CONSTITUTION REINSURANCE CORPORATION, Plaintiff,**

v.

**STONEWALL INSURANCE COMPANY, Defendant.**

**No. 94 Civ. 1888(PKL).**

United States District Court, S.D. New York.

Sept. 17, 1997.

Kelley Drye & Warren LLP, New York City, NY (Kevin J. Walsh, David L. Pitchford, of counsel), for plaintiff.

Pepper, Hamilton & Scheetz, Philadelphia, PA (Deborah F. Cohen, Aaron Krauss, Seth A. Abel, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

In its action for a declaratory judgment, plaintiff Constitution Reinsurance Corporation ("Constitution") moves pursuant to Fed. R.Civ.P. 56(c) for summary judgment against defendant Stonewall Insurance Company ("Stonewall"). For the reasons stated below, plaintiff's motion is granted.

## BACKGROUND

In the early morning hours of May 15, 1983, a drunken driver named Hugo Gomez caused a two-car collision in Hidalgo County, Texas, in which both parents of an infant girl were killed. *See* Plaintiff's Original Petition in *Brown v. Economy Oil Company*, No. C–2930–87–B (93d Jud. Dist., Hidalgo Co., Tex.), annexed as Exhibit 42a to Documents Relied Upon by Plaintiff Constitution Reins. Corp. on Its Motion for Summary Judgment (the "Pl. Docs").[1] The litigation before this Court concerns a reinsurance dispute arising out of that tragic accident.

Earlier that evening, Gomez allegedly had purchased alcohol at an automobile service station/convenience store while in an obviously-intoxicated condition. *See* Pl.'s 3(g) at # 8. The store was owned by Economy, *see*

---

1. *Brown* was filed in Texas State Court on August 28, 1987, by the guardian of and on behalf of the girl. *See* Constitution's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (the "Pl.'s 3(g)") at # 8. Among the named defendants was Economy Oil Company ("Economy"). Economy filed a voluntary bankruptcy petition under Chapter 11 on or about August 9, 1989, allegedly as a result of the *Brown* litigation. *See* Pl.'s 3(g) at # 9. On April 27, 1992, Economy consented to a judgment against it in *Brown* of over $14 million, plus interest. *See* Pl.'s 3(g) at # 24.

*id.,* which was covered by an umbrella liability insurance policy with Stonewall, effective October 1, 1982. *See* Stonewall Insurance Policy No. 56011396, annexed as Exhibit 15 to Pl. Docs. The Stonewall policy, in turn, was reinsured by agreement with Constitution. *See* Constitution Reins. Corp. Certificate No. 78640 (the "Reinsurance Certificate"), annexed as Exhibit 19 to Pl. Docs. As the Court of Appeals for the Second Circuit has explained:

> Primary insurers reinsure to diversify risk. The mechanics of reinsurance can be simply described. One insurer (a "ceding insurer") "cedes" all or part of the risk relating to a policy, or group of policies, to a reinsurer. A portion of the risk not "ceded" is "retained." The reinsurer indemnifies the ceding insurer for any liability incurred that is covered by the reinsurance.

*The Travelers Indemnity Co. v. Scor Reinsurance Co.,* 62 F.3d 74, 76 (2d Cir.1995).

Or, as Judge McLaughlin noted more colorfully:

> Reinsurance is not new. It dates back to the time the first bookie, fearful he could not cover all his bets in the event he were to lose, decided to spread his risk by "laying off" some of the risks by getting other bookies to share his exposure. In a more respectable vein, reinsurance is a device whereby an insurance company that has assumed uncomfortable levels of risk buys insurance from another insurance company to assume some of those risks ... By contract, the reinsurer agrees to assume some or all of the risk that the ceding insurer has assumed.

*Continental Casualty Co. v. Stronghold Ins. Co.,* 77 F.3d 16, 17 (2d Cir.1996) (internal citations omitted). The insurance agreement between Economy and Stonewall and the underlying reinsurance agreement between Stonewall and Constitution are at the heart of this action.

After Stonewall denied coverage and refused to tender a defense for Economy in *Brown,* Economy commenced an adversarial action against Stonewall on March 27, 1991. *See* Pl.'s 3(g) at # 18. After settling *Brown,* the Brown family and Economy allied against Stonewall in hopes of generating funds to help satisfy the *Brown* judgment. *See id.* at # 24. On January 5, 1994, Stonewall agreed to pay Economy $3.25 million in exchange for Economy's dropping its suit. *See* Stonewall Ins. Co.'s Response to Constitution Reins. Corp.'s Rule 3(g) Statement (the "Def.'s 3(g) Response") at # 42.[2]

Constitution commenced this action on March 18, 1994, seeking a declaratory judgment that it is not required to reimburse Stonewall under the reinsurance agreement for Stonewall's settlement with Economy. *See* Def.'s 3(g) Response at # 68. As the parties are citizens of different states and the amount in controversy exceeds $50,000 (exclusive of interest and costs),[3] jurisdiction over this action is appropriate pursuant to 28 U.S.C. Sect. 1332(a)(1). Sitting in diversity, the Court applies New York's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In contract cases, New York courts apply a "center of gravity" approach that takes into account a wide variety of factors, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domiciles or places of business of the contracting parties. *See Lazard Freres & Co. v.*

---

2. In its suit against Stonewall, Economy pleaded in the alternative that Stonewall was liable to Economy either because Economy was covered under its policy with Stonewall or because Stonewall had misrepresented the coverage provided under the policy. *See* First Amended Complaint of Economy, annexed as Exhibit 46 to Pl. Docs. The parties in the instant case have disputed sharply the issue of which of these grounds for potential liability led Stonewall to settle with Economy. In this Opinion, the Court need not and does not address the relative merits of each side's arguments.

3. Congress recently has increased the amount in controversy requirement for diversity jurisdiction to $75,000, effective January 17, 1997. *See* The Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, s 205, 110 Stat. 3847, 3850 (1996). As the instant action was commenced prior to the effective date, the old standard applies. In any event, the amount in controversy far exceeds either limit.

*Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir.1997). Here, the reinsurer is located in New York, the Reinsurance Certificate was issued in New York, the parties had discussions in New York, and performance was to occur in New York. *See* Affidavit of Roger M. Hughes, dated June 9, 1994, at Paragraphs 3–5. As New York thus has the most significant relationship with the dispute, New York law applies in this case. *See id.; see also Arkwright–Boston Mfrs. Mut. v. Calvert Fire Ins.,* 887 F.2d 437, 439 (2d Cir.1989).

## DISCUSSION

### 1. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. When considering a motion for summary judgment, it is this Court's responsibility "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986). Nonetheless, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is particularly appropriate in resolving insurance coverage disputes, because the interpretation of an insurance policy presents a question of law. *See Freedom Gravel Prods., Inc. v. Michigan Mut. Ins. Co.,* 819 F.Supp. 275, 277 (W.D.N.Y.1993) (citing *McGinniss v. Employers Reinsurance Corp.,* 648 F.Supp. 1263, 1266 (S.D.N.Y.1986)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

motion." *Id.* at 323, 106 S.Ct. at 2553 (internal citations omitted). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554 (internal citations omitted). The burden of demonstrating the existence of a genuine issue of material fact then shifts to the non-moving party. *See id.* at 322–23, 106 S.Ct. at 2552–53. The non-moving party may not rely solely on its pleadings nor on conclusory factual allegations in satisfying this burden. *See Gray v. Darien,* 927 F.2d 69, 74 (2d Cir.1991). The non-moving party instead must offer specific evidence supporting its claim that there exists a genuine issue of material fact. *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. In demonstrating that the factual issue in dispute is "genuine", the non-moving party must offer evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Robbins v. Moore Medical,* 894 F.Supp. 661, 667 (S.D.N.Y.1995).

### 2. Prompt Notice

In the instant case, plaintiff is entitled to summary judgment on the ground that defendant failed to provide promptly a definitive statement of loss, in violation of an express condition of the reinsurance contract between Stonewall and Constitution. The relevant contractual language states:

> As a condition precedent, the Company [Stonewall] shall promptly provide the Reinsurer [Constitution] with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit.

Facsimile of Selected Provisions of Constitution's Facilitative [*sic*] Certificate No. 78640, at Paragraph D., annexed as Exhibit 19a to Pl. Docs. The Certificate defines "definitive statement of loss" as:

> [t]hose parts or Portions of the Company's investigative claim file which in the judgment of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate

loss reserves and determine the propensities of any loss reported hereunder.

*Id.* at Paragraph F. In finding that as a matter of law Stonewall failed to provide prompt notice to Constitution, the Court must reach factual conclusions on two issues: when Stonewall's obligation to notify Constitution was triggered and when Stonewall ultimately satisfied this obligation. There exists no genuine issue of material fact as to either issue.

It is undisputed that Stonewall became aware of the potential claim under the Economy policy as of June 6, 1990. *See* Pl. 3(g) at # 46. The following day, Edgar A. Anderson ("Anderson"), Stonewall's Vice President of Claims, completed a Claim Abstract form in connection with the *Brown* litigation. *See id.* at # 47. By September 24, 1990, Anderson was notified in a settlement negotiation letter that the underlying claim involved the death of the parents of an infant girl and realistically could be valued in excess of $10,000,-000. *See id.* at # 52. At the very latest, then, Stonewall's duty to notify its reinsurer was triggered by September, 1990.

It is also undisputed that, on May 7, 1992, Stonewall's accounting department sent to Constitution a document concerning the Economy claim that in the upper left-hand corner indicates that it is the "Initial Reinsurance Notice of Loss." *See* Def. Response to Pl. 3(g) at # 58. The form stated only, "Plaintiff alleges assured sold liquor to an already intoxicated person resulting in auto accident. We follow form to underlying policy which specifically excludes liquor liability." Initial Notice of Loss, annexed as Exhibit 83 to Pl. Docs. This cursory explanation does not mention that the accident involved two deaths nor that the underlying action had been settled for over $14 million. The earliest writing submitted in these proceedings conveying these basic facts surrounding the Economy claim is a letter from Stonewall to its reinsurers dated November 20, 1992. *See* Letter to Interested Reinsurers, annexed as Exhibit 139 to Pl. Docs. This letter therefore is the earliest documentation presented to the Court that arguably satisfies the notice requirement of the reinsurance contract, and it was dated well over *two years* after Stonewall's duty to notify Constitution was triggered.

The prominent "Initial Notice" language at the top of the May letter notwithstanding, Stonewall insists that these letters did not constitute the initial notice to Constitution. *See, e.g.,* Def's. Response to Pl. 3(g) at # 56–58. If Stonewall offered any evidence that directly supported this assertion, there would exist a genuine issue of material fact for a trier of fact to determine at trial. However, the "evidence" upon which Stonewall relies in denying that it failed to provide a definitive statement of loss until November, 1992, is wholly insufficient. Stonewall offers no documentary evidence to buttress its claim that it notified Constitution of the potential liability prior to 1992. It has submitted no letters purporting to notify Constitution, nor even any written notation of an oral notification. Finally, Stonewall does not offer any deposition testimony wherein a Stonewall representative claims that he or she remembers notifying Constitution.

Stonewall instead claims that the deposition testimony of Anderson and Karen Barwick ("Barwick") creates a genuine issue of material fact as to when it notified Constitution. The assertion cannot survive a close reading of the deposition transcripts. Anderson testified at deposition that he was "firmly convinced" that he provided notice to Constitution prior to his retirement on December 31, 1991. *See* Deposition of Edgar A. Anderson, August 2, 1996, at 116:2, annexed to Affidavit of Deborah F. Cohen (the "Cohen Aff."), dated May 30, 1997. However, when asked if his firm conviction was "based on any documents that you have or specific recollection that you have," Anderson admitted that it was "not based on anything except my own work habits." *Id.* at 116:3–116:6. In the absence of documentation or specific recollection, his conjecture on the subject is not direct evidence that he in fact notified Constitution, but rather is mere speculation that he likely would have under the circumstances. *See id.* at 116:7–116:10. Lacking any foundation in the facts of this dispute, Anderson's deposition testimony therefore is

not probative of the issue of whether Stonewall provided prompt notice to Constitution.

Nor does Barwick's deposition testimony offer any evidence that Stonewall fulfilled its notice obligation prior to November, 1992. Barwick, who replaced Anderson, stated, "I would have *assumed* that they [Stonewall's reinsurers] had notice" prior to the spring of 1992. *See* Deposition of Karen Barwick at 97 (the "Barwick Dep.") (emphasis added), annexed to Cohen Aff. She relies on this assumption to explain why she wrote a letter allegedly sent to its reinsurers stating that "[t]he attached claim material should bring your files up-to-date with reference to developments in" the Economy matter.[4] Barwick Letter, dated March 10, 1992, annexed as Exhibit 62 to Pl. Docs. However, the following exchange reveals the foundation for her assumption:

Q: If you recall, what was your basis for assuming that they had notice of this claim at that date?

A: I don't have a recollection.

Q: Do you know whether, in fact, they had notice of this claim at that date?

A: No. I would make that assumption, though, because I would have looked back in the claim file and found a document to which I was adding information....

Q: Do you recall actually having seen any documents that indicated that notice had previously been sent to reinsurers?

A: No.

Barwick Dep. at 97:9–97:18, 98:15–98:18.

Again, as with Anderson's testimony, Barwick opines as to what she "would have" done, but cannot testify directly as to what she did in this case. Her assumption, like Anderson's, is based on the way she normally went about things; neither Stonewall employee offers as foundation for their stated beliefs a single piece of documentary evidence nor any specific recollections about their actions concerning the particulars of *this* matter.

In satisfying its burden of showing that it did not receive prompt notice, Constitution points to the "Initial Notice" letter of May 7, 1992, the complete lack of documentary evidence of earlier notice, and the total inability of any individual on *either* side of the litigation to offer any direct recollection of sending or receiving a definitive statement of loss prior to at least 1992. Given the overwhelming nature of this evidence, the Court finds as a matter of law that no reasonable jury could find that Stonewall provided to Constitution an arguably-adequate notice prior to November 20, 1992. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *see also H.L. Hayden of New York v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989). Stonewall has failed to offer specific evidence supporting its conclusory assertions that there exists a genuine issue of material fact. As the non-moving party has not offered evidence sufficient to allow a reasonable jury to hold otherwise, the Court must find that notice was not provided until November 20, 1992. *See id.*

■ Drawing all reasonable inferences in favor of the non-moving party, the Court finds that approximately twenty-six months passed between the triggering and satisfaction of Stonewall's duty to provide Constitution with a definitive statement of loss on a claim involving both death and a lawsuit. "Clauses in insurance contracts requiring 'prompt notice' ... are generally construed to require notice within a reasonable time after the duty to give notice has arisen." *Christiana Gen'l Ins. Corp. of New York v. Great American Ins. Co.,* 979 F.2d 268, 275 (2d Cir.1992). "[B]eing an insurance company, the reinsured is held to a high degree of compliance with policy provisions which re-

4. Constitution denies receiving the claim even though it is listed as a "cc" recipient. *See* Pl. Memo at 26, fn. 21. While there exists a genuine dispute as to whether it received the letter and enclosure, this dispute is not material in the context of this Opinion because the notice could no longer have been prompt as a matter of law (*see infra* at pp. 129–130). In addition, the letter of March 10, 1992, does not come close to fulfilling the substantive requirements of the notice provision in the reinsurance agreement. *See* Reinsurance Certificate at Para. F.

quire prompt notice to the reinsurer when a loss occurs which may potentially be within policy coverage." *Id.* at 277 (citing 19 Couch on Insurance Sect. 80:71.)

"New York courts have held that the question whether notice was given within a reasonable time may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *State of New York v. Blank,* 27 F.3d 783, 795 (2d Cir.1994). In the instant action, there is no genuine dispute as to the underlying facts bearing on the delay (*see supra* at p. 129), and Stonewall has offered no excuse.

Courts applying New York law routinely have found delays of less than ten months to be unreasonable as a matter of law. *See Blank,* 27 F.3d at 797 (citing, *e.g., Utica Mutual Ins. Co. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121, 123 (2d Cir.1984) (deferring to trial court's finding that six month delay was unreasonable); *Power Auth. v. Westinghouse Electric Corp.,* 117 A.D.2d 336, 342, 502 N.Y.S.2d 420, 423 (1st Dept.1986) (53 days); *Gov't Employees Ins. Co. v. Elman,* 40 A.D.2d 994, 338 N.Y.S.2d 666, 667 (2d Dept.1972) (29 days)); *see also American Home Assur. Co. v. Republic Ins. Co.,* 984 F.2d 76, 78 (2d Cir.1993) (upholding a finding of 36 days as unreasonable). Here, the delay of over two years was unreasonable as a matter of law. Stonewall therefore failed to satisfy its obligation under the reinsurance contract to provide promptly to Constitution a definitive statement of loss.

### 3. Prejudice

■ Constitution need not demonstrate prejudice as a result of Stonewall's failure to provide a definitive statement of loss. Under New York law, an insured's failure to comply with a notice provision serves as a complete defense regardless of prejudice to the insurer. *See Olin Corp. v. Ins. Co. of North America,* 966 F.2d 718, 722–23 (2d Cir.1992); *see also Security Mutual Ins. Co. v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 340

N.Y.S.2d 902, 293 N.E.2d 76 (1972). However, the New York Court of Appeals has held that the presumption is reversed for reinsurers; they generally must demonstrate that late notice was prejudicial in order to avoid obligations under a reinsurance contract. *See Unigard Security Ins. Co. v. North River Ins. Co.,* 79 N.Y.2d 576, 583, 584 N.Y.S.2d 290, 293, 594 N.E.2d 571, 574 (1992).

While the *Unigard* court concludes that the insurance "no prejudice" rule does not apply to a failure to comply with the prompt notice requirement in a contract of reinsurance, the decision is of limited scope:

> "All we hold here is that the reinsurer must demonstrate how it was prejudicial and may not rely on the *presumption* of prejudice that applies in the late notice disputes between primary insurers and their insureds." *Id.* at 584, 584 N.Y.S.2d at 294, 594 N.E.2d at 575 (emphasis added).

We address this question, it must be noted, under the specific prompt notice provision contained in clause C of the North River certificate. There is nothing in this provision or elsewhere in the North River certificate indicating that the parties intended that the giving of notice should operate as a condition precedent. If the ordinary rules of contract were applied, the prompt notice provision in the North River certificate would not be construed as a condition precedent.

*Id.* at 582, 584 N.Y.S.2d at 293–94, 594 N.E.2d at 574–75 (internal citations omitted).

■ The Second Circuit subsequently has recognized that *Unigard* sets a default rule applicable only to reinsurance contracts that do not set prompt notice as a condition precedent. *See Christiania,* 979 F.2d at 273 ("For a reinsurer to be relieved from its indemnification obligations because of the reinsured's failure to provide timely notice, *absent an express provision in the contract making prompt notice a condition precedent,* it must show prejudice resulted from the delay") (emphasis added). In the instant case, however, the prompt notice provision

clearly indicates that it is intended to serve as a condition precedent. *See supra* at p. 127. It follows that *Unigard* does not require a showing of prejudice in order for Constitution to enforce this express condition precedent. *Cf. Continental Cas. Co. v. Stronghold Ins. Co. Ltd.*, 77 F.3d 16, 19 (2d Cir.1996) ("An express contract for indemnity, however, remains a contract. Hence the parties are free, within limits of public policy, to agree upon conditions precedent to suit.") Since the Court finds that there exists no genuine issue of material fact that Stonewall violated the "prompt notice" condition in the reinsurance agreement, the condition operates as a complete bar against Stonewall's recovering under the reinsurance policy.

### 4. Waiver

■ Stonewall has not offered credible evidence showing that Constitution has waived its right to assert late notice as a bar to Stonewall's recovering under the reinsurance policy. The Second Circuit has analyzed the operation of waiver in the insurance context:

> New York law defines waiver as a voluntary and intentional relinquishment of a known right. Waiver may be found where there is direct or circumstantial proof that the insurer intended to abandon the defense. An implied waiver exists when there is an intention to waive unexpressed, but clearly to be inferred from [the] circumstances.... New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense.

*State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir.1991).

In the instant case, Constitution noted in its initial reservation of rights letter that "we question the late nature of your initial notice and subsequent report." Letter from Constitution to Stonewall, dated January 8, 1993,

annexed as Exhibit 164 to Pl. Docs. A subsequent letter added, "[W]e again request an explanation for the apparent late nature of your report." Letter from Constitution to Stonewall, dated September 16, 1993, annexed as Exhibit 191 to Pl. Docs. Other communications that followed contained blanket reaffirmations of prior reservations of rights. *See* Letter from Constitution to Stonewall, dated December 29, 1993 ("December 29 Letter"), annexed as Exhibit 234 to Pl. Docs. (partially denying coverage due to the alleged nature of the Stonewall–Economy dispute while "affirming our Reservation of Rights at this time"); *see also* Letter from Constitution to Stonewall, dated March 18, 1994, annexed as Exhibit 256 to Pl. Docs. (similarly declining coverage and noting, "The above declinations are not necessarily the only reasons for our denial and we do not waive any rights or defenses available to us under the facultative certificate.") Finally, the reinsurance agreement contained a provision stating, "The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof executed by a duly authorized representative of the Reinsurer." Reinsurance Certificate at Paragraph L. There is no evidence of such a waiver having been executed.

Constitution's rights reservations are readily distinguishable from the reservation held ineffective in *AMRO*. In *AMRO*, the insurer tried to enforce a late notice provision after previously having issued a disclaimer letter on other grounds in which it added that it "reserve[d] our rights to rely on additional reasons for disclaimer should they become apparent in the future." *AMRO*, 936 F.2d at 1433, fn. 13. *AMRO* found that the reservation of future reasons for disclaimer was ineffective as to preserving a late-notice defense because the lack of timely notice existed at the time of the disclaimer letter and thus could not become apparent in the future. *See id.* at 1433. The Court added:

> We note that we do not address here the case where the insurer's disclaimer of coverage based on specific grounds is accompanied by an express and unequivocal

statement that other grounds for disclaimer are reserved and not waived. *Id.*

■ In the instant case, Constitution's disclaimer letters contained unequivocal reservations of rights and were preceded by letters noting the lack of prompt notice. *See supra* at p. 131. Under New York law, waiver is the voluntary and intentional relinquishment of a known right; Constitution cannot through its actions be said to have waived its right to assert lack of prompt notice. *Cf. Lugo v. AIG Life Ins. Co.*, 852 F.Supp. 187, 191–92 (S.D.N.Y.1994) (finding no waiver of a late notice defense when an earlier unrelated defense was accompanied by an unrestricted reservation of rights).[5]

Constitution has demonstrated that there exists no genuine issue of material fact that Stonewall did not provide prompt notice, that prompt notice was a condition precedent under the reinsurance agreement, and that there was no waiver of the condition. Therefore, the failure to satisfy the condition prevents Stonewall from recovering under the Reinsurance Certificate.

### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is HEREBY GRANTED.

**SO ORDERED.**

---

[5.] Nor does Constitution's partial payment of $654 to Stonewall under the reinsurance policy constitute a waiver, as the payment was accompanied by a reaffirmation of reservation of rights.

*See* December 29 Letter; *see also Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 274 (2d Cir.1987).