**TIG PREMIER INSURANCE COMPANY, Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant.**

**No. 97 Civ. 5717 (JSR).**

United States District Court, S.D. New York.

Jan. 29, 1999.

*OPINION AND ORDER*

RAKOFF, District Judge.

Reasonable certainty in commercial affairs requires that considerable weight be given to the facial meaning of written .contracts; but too rigid adherence to a "plain meaning" rule may lead, ironically, to results that are at variance with industry norms and standard commercial practices. In attempting to resolve this never completely resolvable dilemma, California is notably more willing than New York to consider extrinsic evidence in determining the true meaning of a contract. This difference, while perhaps more a matter of degree than of kind, is critical to the determination of this case.

In the early 1990's, hundreds of women commenced lawsuits against Dow Corning Corporation ("Dow") for injuries allegedly caused by breast implant products manufactured by Dow. In turn, Dow sought coverage from its various insurers, including the defendant here, Hartford Accident and Indemnity Company ("Hartford"), not only for Dow's liability in damages but also for Dow's considerable expenses in defending these suits. In 1995, Hartford settled its coverage disputes with Dow as to certain of these claims, and then in turn sought reimbursement from various reinsurers that had contracted to assume portions of the risk.

One such reinsurer was the plaintiff here, TIG Premier Insurance Co. ("TIG"), from which Hartford sought a total of $1,202,555. Of this, $128,950 represented TIG's proportionate share of Hartford's obligation to Dow for Dow's payment of liability damages in the underlying lawsuits, $1,048,455 represented TIG's proportionate share of Hartford's reimbursement to Dow of Dow's expenses in defending those suits, and $25,160 represented TIG's proportionate share of Hartford's own litigation costs in its coverage disputes with Dow. Confronted with Hartford's claim, TIG brought the instant action seeking a declaratory judgment that TIG's reinsurance

contract limits TIG's liability to Hartford to $150,000.

TIG argues that this limit is plain from the face of the contract. The standard, short-form Reinsurance Certificate that constitutes the written contract by which TIG agrees to reinsure Hartford for a portion of Hartford's risk in insuring Dow[1] includes within a box entitled "Reinsurance Accepted" the following language: "$150,000 each occurrence/NIL aggregate, being 20% P/O $750,000 each occurrence/NIL aggregate, excess item 5." Interpreting similar contracts in *Bellefonte Reinsurance Co. v. Aetna Cas. and Surety Co.,* 903 F.2d 910, 911 (2d Cir.1990) and *Unigard Security Ins. Co. v. North River Ins. Co.,* 4 F.3d 1049, 1071. (2d Cir.1993), the Court of Appeals held that such language limits the reinsurer's liability to the stated dollar amount, even if the primary insurer, because of its duty to defend the underlying insured, incurs costs considerably beyond the facial dollar amount of its own policy covering the insured. Based on *Bellefonte* and *Unigard,* TIG moves for summary judgment in its favor.

■ The reinsurance contracts in *Bellefonte* and *Unigard* were governed, however, by the substantive law of New York,[2] and accordingly the Court of Appeals interpreted them on their face without resort to extrinsic evidence. But New York substantive law does not apply to the contract here in issue. Rather, under New York's choice-of-law rules (which this Court applies), the contract is governed by the substantive law of California, the state where, *inter alia,* the Reinsurance Certificate was issued and where claims on that certificate would be expected to be made. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Calvert Fire Ins. Co.,* 887 F.2d 437, 439 (2d Cir.1989) (applying New York choice-of-law factors to reinsurance certificate); *Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 980 F.Supp. 124, 127 (S.D.N.Y.1997) (same).[3]

■ California courts have repeatedly ruled that "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Morey v. Vannucci,* 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573, 578. (1998); *accord Southern Pacific Land Company v. Westlake Farms, Inc.,* 188 Cal.App.3d 807, 815–6, 233 Cal.Rptr. 794, 799 (1987); *Southern California Edison v. Superior Court,* 37 Cal.App.4th 839, 848, 44 Cal. Rptr.2d 227, 232 (1995).[4] Specifically, the courts of California apply a two-step approach: first, extrinsic evidence is provisionally admitted to determine whether the language of the contract, in light of all the circumstances, is "fairly susceptible of either one of the two interpretations contended for"; and then, if the court makes such a determination, the extrinsic evidence is fully admitted for the factfinder to weigh in determining the meaning of the contract. *See Southern Pacific Land Company,* 188 Cal. App.3d at 816, 233 Cal.Rptr. at 799; *see also Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663 (2d Cir.1996).

---

1. This so-called "facultative reinsurance" is a form of indemnity contract. *See Unigard Security Ins. Co. v. North River Ins. Co.,* 4 F.3d 1049, 1054. (2d Cir.1993).

2. This is explicit in *Unigard.* While *Bellefonte* does not expressly indicate which state's law governs the contract there in issue, the parties here agree that the contract there was governed by New York law. *See e.g.,* Transcript of Hearing, September 11, 1998 at 46–47.

3. Although TIG argues for the application of the law of Connecticut (where its adversary, Hartford, is incorporated), as opposed to California law (where the contract was entered into), it offers no applicable precedent supporting this

approach nor any persuasive reason why the above-cited precedents should not be followed. Moreover, Connecticut law on the issue in question may not be as different from California law as TIG apparently believes. *See Kerin v. United States Postal Service,* 116 F.3d 988, 992, n. 2 (2d Cir.1997).

4. *See also Trident Center v. Connecticut General Life Insurance Co.,* 847 F.2d 564, 565 (9th Cir. 1988), per Kozinski, C.J.("This case therefore presents the question whether parties in California can ever draft a contract that is proof to parol evidence. Somewhat surprisingly, the answer is no."); *but cf. Bank of the West v. Valley National Bank of Arizona,* 41 F.3d 471, 477 (9th Cir.1994).

Hartford offers considerable extrinsic evidence to support its view that the above-quoted notations in the "Reinsurance Accepted" box are a kind of industry shorthand that means that TIG's reinsurance coverage extends to 20% of all of the risks insured under Hartford's underlying insurance policy with Dow (other than a certain floor amount of risk retained by Hartford as set forth in "item 5"), with the "$150,000" figure setting the cap only on the portion of those risks that corresponds to the "$750,000 per occurrence" portion of Hartford's risk (i.e., its reinsured risk on Dow's liability damages). For example, Hartford offers evidence that, in 1994, TIG, in paying a claim under a nearly identical reinsurance policy with Hartford (the "Motors policy"), reimbursed Hartford for legal expenses in addition to the dollar amount set forth in the "Reinsurance Accepted" box. Hartford also offers evidence from TIG's own internal documents concerning the very policy here at issue, in which claims analysts administering the policy on behalf of TIG state that "[e]xpenses are in addition to limits," Def. Ex. 30 at 1; that "TIG can anticipate that the 150,000 max loss amount will be used up. Further expenses will no doubt be very large," Def. Ex. 25 at 2; and that "[t]he policy limits under such policies are not eroded by defense expenses," Def. Ex. 50, at 1, 4.[5]

Further still, Hartford proffers the testimony of two experts who worked in the reinsurance industry in the 1970's—the period when this policy was entered into—to the effect that it was "standard practice within the industry" for reinsurers, in addition to paying, up to the Reinsurance Accepted dollar amounts, their pro-rata share of the primary insurer's payments of the underlying insured's liability damages, to also pay the same percentage of the primary insured's reimbursement of the underlying insured's defense costs. *See* Webb Rep. at 4, Molloy Rep. at 10–11. These experts also opine that such cost-supplement arrangements were "the norm," Molloy Rep. at 5, *see also* Wells Rep. at 4, and that the dollar amount in the

Reinsurance Accepted box of the TIG certificate "would not be understood as an absolute cap on the insurer's potential payments to or on behalf of the policyholder," Molloy Rep. at 7.[6]

The Court finds that this and other evidence adduced by Hartford is more than sufficient to create a genuine issue of fact as to whether the language here used in the reinsurance certificate was a kind of shorthand intended by the parties to mean that TIG's coverage included not only 20% of Hartford's obligations to Dow on the $750,000 reinsured liability risk but also 20% of the related defense costs incurred or covered by Hartford under its primary policy with Dow. While not facially apparent from the plain words of the contract, this meaning becomes perfectly plausible once account is taken of the extrinsic evidence proffered by Hartford as to the specialized meaning these terms convey in the context of the reinsurance industry, thus revealing a latent ambiguity to which a New York court would be blinded but which a California court would recognize. On this basis, plaintiff's motion for summary judgment is denied.

SO ORDERED.

---

5. California courts have ruled that " '[t]he practical interpretation of the contract by one party, evidenced by his words or acts, can be used against him on behalf of the other party, even though that other party had no knowledge of those words or acts when they occurred ...' "

*Southern California Edison v. Superior Court,* 37 Cal.App.4th at 851, 44 Cal.Rptr.2d at 234.

6. The Court denies TIG's separate motion to bar such expert evidence.