CBS CORPORATION,
Petitioner/Plaintiff,

v.

NORTHROP GRUMMAN
CORPORATION,
Respondent/Defendant.

Northrup Grumman Corporation,
Counterclaim–Plaintiff,

v.

CBS Corporation, Counterclaim–
Defendant.

No. 98 Civ. 3029(JSR).

United States District Court,
S.D. New York.

June 29, 1999.

Stephen Madsen, Max Shulman, Cravath, Swaine & Moore, New York City, for plaintiff.

Ronald Meyer, Munger, Tolles & Olson, Los Angeles, CA, Gary Naftalis, Kramer, Levin & Naftalis, New York City, for defendant.

## *MEMORANDUM ORDER*

RAKOFF, District Judge.

Both sides seek summary judgment on the First and Fifth Counterclaims asserted by defendant Northrop Grumman Corporation ("Northrop"). On June 22, 1999, the Court telephonically informed counsel that Northrop's motion would be denied and CBS' motion would be granted in part and denied in part. This Memorandum Order will formally confirm those rulings and briefly state the reasons therefor.

In January 1996, Northrop agreed to purchase substantially all the assets of the Electronic Systems Group ("ESG") of CBS Corporation (then Westinghouse Corpora-

tion) pursuant to an Asset Purchase Agreement dated January 3, 1996. Northrop's First Counterclaim seeks a declaratory judgment that the purchased assets included $189 million in "prepayment credits" derived from CBS' overpayments of certain pension contributions made on behalf of ESG employees working on government contracts. Northrop's Fifth Counterclaim seeks monetary damages for CBS' failure to transfer these prepayment credits. The Court, by Memorandum Order dated January 4, 1999, ruled that the Asset Purchase Agreement was ambiguous as to whether the prepayment credits were included in the transferred assets and that extrinsic evidence would be necessary to determine the parties' intent. While now, at the close of discovery, each side has submitted extrinsic evidence on this question, genuine issues of disputed fact remain to be determined by the trier of fact before the question can be answered.

For example, Northrop argues that the parties' intent to transfer these credits to Northrop is demonstrated by, *inter alia,* a document dated January 30, 1996 that was faxed by CBS' Director of Tax Administration to CBS' outside accountants, in which it is clearly indicated that the prepayment credits were among the assets being transferred to Northrop under the recently-signed Agreement. *See* Declaration of Ronald Meyer, dated April 26, 1999, Ex. 15.[1] CBS, however, counters with evidence that Northrop itself never mentioned the prepayment credits in its actuarial reports and cost submissions to the Government, nor even so much as requested from CBS any information or documents relating to the prepayment

---

1. CBS' challenge to the admissibility of this document is without substance, since the document, which was sent by CBS to an outside party, qualifies as an admission of a party-opponent under Rule 801(d)(2), *see South Central Bank & Trust Co. v. Citicorp Credit Services, Inc.,* 863 F.Supp. 635, 645–46 (N.D.Ill.1994), and therefore is neither hearsay nor subject to separate guarantees of trustworthiness. *see* Fed.R.Evid. 801, Advisory Committee Note, 1972 ("No guarantee of trustworthiness is required in the case of an admission."). Although the document was never sent to Northrop, "[t]he practical interpretation of the contract by one party, evidenced by his words or acts, can be used against him on behalf of the other party, even though that other party had no knowledge of those words or acts when they occurred," Corbin on Contracts (1960) § 558, p. 256; *see also TIG Premier v. Hartford Accid. & Indemn. Corp.,* 35 F.Supp.2d 348, 351 n. 5. (S.D.N.Y. 1998).

credits until CBS asserted other claims against Northrop. These and other material factual disputes over whether or not the parties intended the credits to pass to Northrop (or regarded them as assets at all) preclude Northrop from obtaining summary judgment in its favor on either its First or Fifth Counterclaim.

■ They do not, however, preclude CBS from obtaining summary judgment in its favor on Northrop's First Counterclaim (which, as mentioned, seeks a declaratory judgment that the Agreement required the credits to pass to Northrop), for the independent reason that section 7.1 of the Asset Purchase Agreement provides that Northrop's "sole and exclusive remedy" for breach of the Agreement is indemnification. While Northrop seeks to evade the force of this provision by arguing that a declaratory judgment is not a "remedy" but simply a declaration of rights, *cf.* Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, Civil 3d, ¶ 2751, Congress clearly thought otherwise, since it entitled the statutory section authorizing the district courts to award declaratory judgments "Creation of remedy." 28 U.S.C. § 2201. Further, the text of the section characterizes declaratory judgments as a form of "relief," a synonym for remedy. *See id.*

■ By contrast, Northrop's Fifth Counterclaim, by seeking indemnification in the form of damages for CBS' failure to transfer the prepayment credits, seeks the remedy provided by the Asset Purchase Agreement. Although CBS argues that the Fifth Counterclaim is nonetheless barred by section 8.3 of the Asset Purchase Agreement, which requires that claims for breach of warranty be brought within one year of the closing of the transaction, the Fifth Counterclaim alleges that the failure to transfer the prepayment credits is not only a breach of warranty but also a breach of covenant, *see* Answer and First Amended Counterclaims of Northrop Grumman Corp., ¶¶ 44–45; *see also* Asset Purchase Agreement §§ 1.1, 4.4,

4.12. To that latter extent it is not time barred.

■ While CBS also argues that, even if it agreed to transfer the credits to Northrop, such a promise would be unenforceable because it violates regulatory policy, CBS is unable to cite any statute, regulation, or court decision prohibiting such a transfer. Moreover, if one party is unable to transfer certain purchased assets because of an implied regulatory prohibition (rather than because the transfer is *malum in se* or known to be unlawful at the time of contracting), the party, rather than reaping a windfall, must indemnify the purchaser for the value of the assets. *See Lloyd Capital Corp. v. Pat Henchar, Inc.,* 80 N.Y.2d 124, 127–28, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992); *see generally* Williston on Contracts § 1934, at 19–21 (3d ed.1978). In this respect, the situation is more akin to a subsequent change in regulation than to an agreement that is void *ab initio. Cf.* Restatement (Second) of Contracts § 264 (1979), Comment a (noting that "[w]ith the trend toward greater governmental regulation," an agreement to do something subsequently prohibited "is usually interpreted as one to pay damages if performance is prevented rather than one to render performance in violation of the law.").

The Court has considered the parties' other arguments and finds them either without merit or non-dispositive of the instant motions. Accordingly, for the foregoing reasons, the motion of Northrop for partial summary judgment is denied in its entirety and the motion of CBS for partial summary judgment is granted as to Northrop's First Counterclaim and denied as to Northrop's Fifth Counterclaim. The parties are reminded that the trial of this matter will commence promptly at 9:00 a.m. on December 6, 1999 in Courtroom 14–B, 500 Pearl St., New York, NY.

SO ORDERED.